UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
———————————————————————
GOLDEN BRIDGE LLC d/b/a GOLDEN BRIDGE
FUNDING LLC,

                          Plaintiff,

              -against-

DGS18 REALTY LLC, ISRAEL DANA, and
"JOHN DOE NO. 1 TO 10," inclusive, the last
ten names being fictitious and unknown to
plaintiff, the persons or parties intended being
the tenants, occupants, persons or corporations,
if any, having or claiming an interest in or lien
upon the premises described in the complaint,

                          Defendants.
———————————————————————

**MEMORANDUM & ORDER**
**22-CV-5857 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Golden Bridge LLC d/b/a Golden Bridge Funding LLC ("Golden Bridge" or "Plaintiff") brings this commercial foreclosure action against Borrower DGS18 Realty LLC ("Borrower") and Israel Dana ("Guarantor") (collectively, "Defendants"). Pending before the court are Plaintiff's (A) motion for summary judgment and (B) motion to appoint a receiver. (Plaintiff's Motion for Summary Judgment ("Pl.'s Mot. for SJ") (Dkt. 30-19); Plaintiff's Motion to Appoint a Receiver ("Pl.'s Mot. for Receiver") (Dkt. 33-13); *see also* Plaintiff's Proposed Order Appointing Receiver (Dkt. 33-12).) Plaintiff also requests that the court "amend[] the caption of this action to delete defendants sued herein as 'John Doe No. 1 to 10.'" (Pl.'s Mot. for SJ at 1.) Defendants oppose only Plaintiff's motion for summary judgment. (Defendants' Opposition to Summary Judgment ("Defs.' Opp.") (Dkt. 31-9); *see also* Plaintiff's Reply ("Pl.'s Reply") (Dkt. 32).) For the reasons that follow, John Does No. 1 to 10 are DISMISSED from this action, Plaintiff's motion for summary

judgment is GRANTED, and Plaintiff's motion to appoint a receiver is GRANTED. Additionally, Douglas Rosenberg is APPOINTED as Receiver of the Brooklyn Premises, and the court ADOPTS Plaintiff's Proposed Order Appointing Receiver in its entirety.

## I.   BACKGROUND[1]

### A.   Factual Background

Borrower DGS18 Realty LLC is the owner of the premises located at 2729-2731 West 16th Street, Brooklyn, New York 11224 (the

---

[1] Unless otherwise noted, the following facts are drawn from the parties' respective Local Civil Rule 56.1 statements and are undisputed. The relevant 56.1 statements include Plaintiff's 56.1 Statement in support of the instant motion for summary judgment, (Pl.'s 56.1 St. (Dkt. 30-1)), and Defendants' Response to Plaintiff's 56.1 Statement, (Defs.' Response to Pl.'s 56.1 St. (Dkt. 31-8)).

Defendants did not submit a 56.1 statement of their own. Instead, Defendants state: "Rather than restate the facts not in dispute referenced in Defendants' Statement of Material Facts submitted by Defendants in support of their opposition to the Motion that statement and the exhibits thereto are incorporated by reference." (Defs.' Response to Pl.'s 56.1 St. at 3.) To the extent Defendants intend to incorporate the statement of facts from their memorandum in opposition as their own 56.1 statement, such a maneuver does not comport with Local Rule 56.1. *See* E.D.N.Y. Loc. Civ. R. 56.1(b) (noting that "[t]he papers opposing a motion for summary judgment *must* include a correspondingly numbered paragraph admitting or denying . . . each numbered paragraph in the statement of the moving party, and if necessary, *additional paragraphs* containing a separate, short and concise statement of additional material facts" (emphases added)). As such, the court will not consider the facts set forth in Defendants' memorandum of law. Additionally, while Defendants filed a Response to Plaintiff's 56.1 Statement with "correspondingly numbered paragraphs admitting or denying . . . each numbered paragraph in [Plaintiff's] statement," most of Defendants' responsive paragraphs contain flat denials, unsupported by citation to admissible evidence. "Pursuant to Local Civil Rule 56.1(d), bald denials cannot raise a genuine issue of material

"Brooklyn Premises"). (Pl.'s 56.1 St. ¶ 1.) On April 24, 2019, Plaintiff loaned Borrower the principal sum of $1,142,000.00, as evidenced by a mortgage note (the "Note") executed on the same day. (*Id.* ¶ 2.) As security for payment of Borrower's obligations under the Note, Borrower executed and delivered to Plaintiff a mortgage and assignment of leases and rents dated April 24, 2019 (the "Mortgage"), securing the principal amount of $1,142,000.00 and encumbering: (1) the Brooklyn Premises and (2) the real property located at 81 Sharrott Avenue, Staten Island, New York 10309 (the "Staten Island Premises").[2] (*Id.* ¶ 3; *see also* Note (Dkt. 1-2) at 1; Mortgage (Dkt. 1-3) at 1.) Also on April 24, 2019, Israel Dana, the sole member of Borrower DGS18 Realty LLC, guaranteed to Plaintiff the full and prompt payment of all of Borrower's Indebtedness. (Pl.'s 56.1 St. ¶ 4; *see also* Guaranty (Dkt. 1-4); First Extension Agreement (Dkt. 30-15) at ECF

---

fact, and [the non-moving party] must accompany each denial with a citation to admissible evidence." *See Garnica v. Edwards*, 72 F. Supp. 3d 411, 416 (S.D.N.Y. 2014); *see also* E.D.N.Y. Loc. Civ. R. 56.1(d) (stating that "each statement denying and controverting any statement of material fact, must be followed by citation to evidence"). Thus, "Defendants' unsupported denials . . . cannot, without citation to any evidence in the record, create a genuine issue of fact." *Arista Recs. LLC v. Lime Grp. LLC*, No. 6-CV-5936 (KMW), 2011 WL 1641978, at *4 (S.D.N.Y. Apr. 29, 2011) (collecting cases); *see also Harris v. Metro-North Commuter R.R.*, No. 12-CV-543 (NSR), 2014 WL 12543819, at *1 n.1 (S.D.N.Y. July 8, 2014) ("The parties are reminded that Local Civil Rule 56.1 exists to aid the Court in efficiently identifying issues of fact, and it is to be followed strictly."). While the court "has broad discretion to . . . overlook a party's failure to comply with local court rules," here, the court considers the facts as set forth in the parties' respective 56.1 statements, and only to the extent those statements and denials are supported by citation to admissible evidence. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).

[2] The record is unclear as to whether Borrower owns the Staten Island Premises. Ultimately, while the Mortgage encumbers both the Brooklyn and Staten Island Premises, Plaintiff seeks foreclosure only as to the Brooklyn Premises. (*See* Compl. (Dkt. 1) at ¶¶ 2, 15-28.)

3

p. 3.) The Mortgage was recorded on May 31, 2019. (Pl.'s 56.1 St. ¶ 3.)

The Note, Mortgage, Guaranty, and related loan documents (collectively, the "Loan Documents") set a maturity date of May 2, 2020, meaning that "all amounts due and owing under the Loan Documents" were due on that date. (*Id.* ¶ 6; *see also* Note at 1.) Prior to maturity, the Loan Documents required Borrower to make monthly payments at an interest rate of 9%, or $8,565.00 per month. (Note at 1.) The Loan Documents also provided that the entire debt "shall become due" after the occurrence of one or more specified events, including "default in the payment of any installment of principal or interest." (Mortgage ¶ 33(a).) Upon the occurrence of any default, the interest rate would increase to the "Default Rate" of 24%. (*Id.* ¶¶ 7, 37.)

On September 9, 2020, Plaintiff and Borrower executed an extension agreement (the "First Extension Agreement"), pursuant to which Plaintiff agreed to extend the original maturity date from May 2, 2020 to May 2, 2021 and to continue to accept interest-only monthly payments of $8,565.00, in consideration of an extension fee and legal fees.[3] (Pl.'s 56.1 St. ¶ 9; First Extension

---

[3] Plaintiff contends that, after the May 2, 2020 maturity date, Borrower "was unable to fulfill its obligations under the Loan Documents," citing the declaration of Golden Bridge's Chief Executive Officer, Erez Britt, in support of its claim. (Pl.'s 56.1 St. ¶ 7; *see also* First Britt Decl. (Dkt. 30-10) ¶ 9.) Defendants blanketly deny this assertion, but cite no evidence in support of their denial. (Defs.' Response to Pl.'s 56.1 St. ¶ 7.) While such a blanket denial would ordinarily permit the court to deem the fact admitted, Plaintiff's assertion is belied by its own 56.1 Statement. Specifically, three paragraphs after it contends that Borrower "was unable to fulfill its obligations under the Loan Documents" after May 2, 2020, Plaintiff states: "As evidenced by the [Borrower Statement] submitted in support of Golden Bridge's original motion for summary judgment, Borrower continued to make payments of $8,565.00 . . . through the end of 2020 and continuing through and after May 2, 2021." (Pl.'s 56.1 St. ¶¶ 7, 10.) Indeed, the Borrower Statement demonstrates Borrower's—mostly timely—

4

Agreement at ECF pp. 2-3.) According to the parties, the First Extension Agreement "incorrectly references the [Staten Island Property]," but "[a]ll of the other references in the First Extension Agreement accurately reflect the extension of the Note and its application to the [Brooklyn Premises]." (Pl.'s 56.1 St. ¶ 9; Defs.' Response to Pl.'s 56.1 St. ¶ 9; First Extension Agreement at ECF p. 2.)

Borrower continued to make interest-only monthly payments through May 2, 2021. (Pl.'s 56.1 St. ¶ 10; Borrower Statement.) Then, following the expiration of the extended maturity date of May 2, 2021, counsel for Plaintiff prepared a second extension agreement (the "Second Extension Agreement"), to extend the maturity date to May 1, 2022. (Pl.'s 56.1 St. ¶¶ 11-12; Unexecuted Copy of Second Extension Agreement (Dkt. 30-17).) Inexplicably, Plaintiff at once claims that Borrower did not execute and return the Second Extension Agreement or pay an extension fee, while at the same time asserting that the loan did, in fact, have a maturity date of May 1, 2022 and that Borrower did, in fact, "pa[y] an extension fee of $22,840.00 to counsel for Golden Bridge in January 2022." (Pl.'s Mot. for SJ at 4-6; Pl.'s 56.1 St. ¶ 13; First Britt Decl. ¶ 15.) Plaintiff even goes so far as to request, as part of its summary judgment motion, that the court "conform the pleadings to the proof" and consider May 2,[4] 2022 as the actual maturity date. (Pl.'s Reply at 5.) Defendants,

_____

compliance with its monthly payment obligations through January 30, 2022. (Borrower Statement (Dkt. 30-16).) As such, the court does not accept as true Plaintiff's assertion that, after the May 2, 2020 maturity date, Borrower "was unable to fulfill its obligations under the Loan Documents." (Pl.'s 56.1 St. ¶ 7.)

[4] Plaintiff also contradicts itself with respect to the exact date of maturity, asserting both that the second modified maturity date was May 1, 2022, and that it was May 2, 2022. (*Compare* Pl.'s 56.1 St. ¶ 12 (May 1, 2022 maturity date), *and* Pl.'s Mot. for SJ at 4 (May 1, 2022 maturity date), *with* Pl.'s Reply at 5 (May 2, 2022 maturity date).)

for their part, assert that Plaintiff and Borrower "entered the second agreement extending the maturity date of the Note to May 1, 2022, and [counsel for Defendants] paid [the] second extension fee of $22,840.00 to then-counsel for Golden Bridge in January 2022." (Defs.' Response to Pl.'s 56.1 St. ¶ 13; *see also* Email Thread (Dkt. 31-2) (containing email thread wherein the parties discuss execution of the Second Extension Agreement and payment of the extension fee).)

Although neither party produces a copy of the executed agreement, the parties apparently agree that they executed the Second Extension Agreement, that counsel for Defendants paid the second extension fee, and that the agreement extended the loan's maturity date to May 1, 2022. (Pl.'s 56.1 St. ¶ 12; Defs.' Response to Pl.'s 56.1 St. ¶¶ 12, 13; *see also* Unexecuted Copy of Second Extension Agreement at ECF p. 2 (providing for a maturity date of May 1, 2022).) The parties also agree that, following the second modification, Borrower continued to make interest-only monthly payments through January 2022, including three payments on January 30, 2022 credited for November 2021, December 2021, and January 2022. (Pl.'s 56.1 St. ¶ 14; Defs.' Response to Pl.'s 56.1 St. ¶¶ 13-14; Borrower Statement.)

Plaintiff asserts that Defendants made no further loan payments after January 2022, including the payments due on the May 1, 2022 maturity date. (Pl.'s 56.1 St. ¶ 15; First Britt Decl. ¶ 17.) Defendants blanketly deny this assertion, but cite no evidence in support of their denial. (Defs.' Response to Pl.'s 56.1 St. ¶ 15.)

The parties do agree, however, that on May 11, 2022, Plaintiff sent a letter to Guarantor (the "Default Letter"), stating, among other things, that the "DGS18 Loan" had matured, that "Borrower[] failed to pay the outstanding amount[] due upon maturity," and that the amount then due was $1,167,695.00, which is equal to the principal amount of $1,142,000.00 plus three monthly interest payments of $8,565.00. (Default Letter

(Dkt. 1-5) at ECF pp. 3-4; Note at 1; Pl.'s 56.1 St. ¶ 17; Defs.' Response to Pl.'s 56.1 St. ¶ 17.) The parties also agree that while Plaintiff sent a Default Letter to Guarantor, it did not send a similar letter addressed to Borrower.[5] (Pl.'s 56.1 St. ¶¶ 16-19; Defs.' Response to Pl.'s 56.1 St. ¶¶ 17-18.)

### B.  Procedural History

Plaintiff commenced this action on September 30, 2022, alleging that Borrower defaulted on May 2, 2020, when it failed to make the required principal and interest payments due on the loan's maturity date, and that Guarantor then failed to make payments pursuant to the Default Letter, as required by the Guaranty. (Compl. ¶¶ 19-22.) Plaintiff seeks an order of foreclosure, a directive that the Brooklyn Premises be sold and the resulting proceeds be due to Plaintiff, a deficiency judgment against Borrower and Guarantor, and attorneys' fees. (*Id.* at 8-9.) The Complaint and its attachments make no mention of the First or Second Extension Agreements. (*See generally id.*)

Borrower and Guarantor answered on November 7 and November 11, 2022, respectively. (Borrower Answer (Dkt. 8); Guarantor Answer (Dkt. 11).) In their answers, Borrower and Guarantor raise numerous affirmative defenses, including that Plaintiff lacks standing, that Plaintiff and Borrower "entered into an express modification agreement which extended the terms of [the] mortgage loan well beyond the purported default date,"

---

[5] The Loan Documents show that Guarantor and Borrower have the same mailing address: 2621 East 63rd Street, Brooklyn, New York 11234. (*Compare* Default Letter at ECF p. 2 (listing mail-to address as: Israel Dana, 2621 East 63rd Street, Brooklyn, New York 11234), *with* Mortgage ¶ 55 (listing mail-to address for Borrower as: DGS18 REALTY LLC, 2621 East 63 Street, Brooklyn, New York 11234).) This is the address to which Plaintiff sent the Default Letter addressed to Guarantor. (Default Letter at ECF p. 2.) Thus, while the Default Letter was addressed to Israel Dana, the court notes that the Letter was sent to the mailing address of both Guarantor and Borrower.

and that Plaintiff failed to provide Borrower with notice of default as required by the Loan Documents. (*See* Borrower Answer ¶¶ 29-31; Guarantor Answer ¶¶ 29, 36.) With leave of court, Plaintiff filed its first motion for summary judgment on April 6, 2023. (*See* Pl.'s First Mot. for SJ (Dkt. 21-15); *see also* Pl.'s Reply in Support of First Mot. for SJ (Dkt. 22).) Defendants filed their opposition to Plaintiff's first motion for summary judgment on March 24, 2023. (*See* Defs.' Opp. to First Mot. for SJ (Dkt. 18-1).) On December 14, 2023, Plaintiff filed its first unopposed motion to appoint a receiver. (Pl.'s First Mot. for Receiver (Dkt. 25).)

On January 2, 2024, the court denied Plaintiff's motion for summary judgment without prejudice to renewal for the principal reason that Plaintiff failed to provide documentary evidence demonstrating that Borrower was in default—a necessary element of a *prima facie* case of foreclosure under New York law. *Golden Bridge LLC v. DGS18 Realty LLC*, No. 22-CV-5857 (NGG) (CLP), 2024 WL 22784, at *2-3 (E.D.N.Y. Jan. 2, 2024).[6] At the time of the court's decision, Plaintiff alleged that Borrower was in default as of May 2, 2020, while Defendants argued that they were not in default because the parties had modified their agreement—although Defendants provided no evidence of such a modification. *Id.* at *3. To prove default, Plaintiff pointed to a declaration by Erez Britt, who swore that Borrower was in default, and a document labeled "Borrower Statement of Account." *Id.* at *2. The court concluded that this did not prove default, reasoning:

> This Borrower Statement . . . does not provide "documentary evidence" that the Borrower was in default. This statement is one page, showing a summary in the top right corner and, in the bottom half of the page, a table with dates between April 24, 2019 and January 2, 2022. In the summary, the

---

[6] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

statement indicates that as of February 8, 2023, the Borrower had $0.00 of any unpaid interest, $0.00 of late charges and $0.00 of any other charges that were due. It also indicates that the "Regular Payment" is $8,565.00 and that the "Note Rate" was 9.000%. The table indicates that the Borrower made payments of $8,565.00 monthly between May 2019 and January 2022 (the last date shown in the table) and that the Borrower was not required to and did not make payments for "Late" charges or "Other" charges. The table also notes next to each interest payment a description of "Payment – Thank You." Reviewing this table, the court is unable to see how it supports that the Borrower was in default. While January 2022 is past the maturity date of May 2, 2020, there is nothing indicating that Borrower was in default beginning on that date, as Plaintiff asserts, as opposed to making timely payments under a modified loan agreement, as Defendants assert. For instance, in no month did it appear that Plaintiff charged the higher Default Rate of 24%. Nor is there any indication that Plaintiff paid any late charges. Thus, there is no indication from this exhibit that the Borrower paid anything less than the amount required each month.

*Id.* at *3. The court further concluded that because the Default Letter was sent to Guarantor and not Borrower, stated an amount that is equal to principal and only three months' interest at the 9% rate (not the 24% Default Rate), and did not provide additional evidence of non-compliance with the required payment schedule, the Default Letter "does not provide sufficient documentary evidence that the Borrower was in default." *Id.* Thus, the court denied without prejudice Plaintiff's motion for summary judgment.[7] *Id.*

---

[7] The court denied Plaintiff's motion to appoint a receiver for substantially the same reasons. (*See* Order Dated 5/2/2024.)

Thereafter, the court granted Plaintiff leave to file a renewed motion for summary judgment. (*See* Order Dated 2/2/2024.) Plaintiff filed the instant fully briefed motion for summary judgment on April 24, 2024, and the instant unopposed motion to appoint a receiver on May 20, 2024. (*See* Pl.'s Mot. for SJ; Pl.'s Mot. for Receiver.) It is in these papers that Plaintiff, for the first time, describes the First and Second Extension Agreements. (*See* Pl.'s Mot. for SJ at 3-4.)

## II. LEGAL STANDARDS

### A. Motion for Summary Judgment

Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). As such, Local Civil Rule 56.1 provides that a motion for summary judgment "must be accompanied by a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." E.D.N.Y. Loc. Civ. R. 56.1(a) (eff. Jan. 2, 2025). Once the movant meets its initial burden of demonstrating the absence of a genuine issue of material fact, the opposing party "must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also* E.D.N.Y. Loc. Civ. R. 56.1(b) (providing that the papers opposing a motion for summary judgment "must include a correspondingly numbered paragraph admitting or denying . . . each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate . .

. statement of additional material facts as to which it is contended that there exists a genuine issue to be tried").

"An issue of fact is material . . . if it might affect the outcome of the suit under the governing law." *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000). A "genuine" issue of fact "is one where the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Khotovitskaya v. Shimunov*, 723 F. Supp. 3d 235, 241 (E.D.N.Y. 2024). Importantly, a genuine issue of material fact "cannot be established by conclusory allegations, conjecture, and speculation." *Id.* "Bare denials, without more, will not create a genuine issue of fact." *Allstate Ins. Co. v. Longwell*, 735 F. Supp. 1187, 1193 n.2 (S.D.N.Y. 1990). Thus, Local Rule 56.1 provides that "[e]ach statement by the movant or opponent under Rule 56.1(a) and (b), including each statement denying and controverting any statement of material fact, *must* be followed by citation to evidence that would be admissible and set forth as required by Fed. R. Civ. P. 56(c)." E.D.N.Y. Loc. Civ. R. 56.1(d) (emphasis added). Federal Rule of Civil Procedure 56(c), in turn, provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion" by (A) "citing to particular parts of materials in the record" or (B) "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). If a party fails to properly support an assertion or denial of fact as required by Rule 56(c), the court may, among other things, "consider the fact undisputed" or "grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)-(3).

Finally, in adjudicating a motion for summary judgment, the court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its

favor." *ING Bank N.V. v. M/V TEMARA, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018).

### B.  Motion to Appoint A Receiver

Receiverships are "traditionally used to protect the value of an asset that is the subject of litigation." *United States v. Ianniello*, 824 F.2d 203, 205 (2d Cir. 1987); *see also United States v. Falls Ct. Props. Co.*, No. 8-CV-1197, 2009 WL 1924771, at *6 (N.D.N.Y. July 1, 2009) ("The appointment of receiver serves an important function of protecting assets pledged as security for a debt and permits the lender to preserve income and control expenses associated with the operation of the property in question."). "The court's authority to appoint a receiver is ultimately equitable, but is procedurally governed by Rule 66." *Nissan Motor Acceptance Corp. v. Nemet Motors, LLC*, No. 19-CV-3284 (NGG) (CLP), 2022 WL 6784868, at *2 (E.D.N.Y. May 5, 2022); Fed. R. Civ. P. 66 ("These rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule.")

Upon a motion to appoint a receiver, the court's "threshold inquiry" is "whether the mortgage contains a clause authorizing such appointment." *Wilmington PT Corp. v. Tiwana*, No. 19-CV-2035 (DLI), 2020 WL 13158288, at *3 (E.D.N.Y. Mar. 25, 2020) (quoting *NWL Props., Inc. v. 401 E. 89th St. Owners, Inc.*, 95-CV-85 (JFK), 1995 WL 221078, at *1 (S.D.N.Y. Apr. 12, 1995)). In addition to considering the mortgage's express terms, courts also consider the following equitable factors:

> (1) any fraudulent conduct on the part of the defendant; (2) the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; (3) the inadequacy of the available legal remedies; (4) the probability that harm to the plaintiff by denial of the appointment would be

greater than the injury to the parties opposing appointment; and, in more general terms, (5) the plaintiff's probable success in the action; and (6) the possibility of irreparable injury to the plaintiff's interests in the property.

*Nissan Motor Acceptance Corp.*, 2022 WL 6784868, at *2. "The appointment of a receiver is considered an extraordinary remedy that should be employed with great caution and granted only where such relief is clearly necessary to protect a plaintiff's interests in the relevant property." *Bristol Oaks, L.P. v. Werczberger*, No. 95-CV-3973 (FB), 1996 WL 19207, at *1 (E.D.N.Y. Jan. 2, 1996).

### III. DISCUSSION

#### A. Motion for Summary Judgment

In a case involving real property "located in New York, the applicable law is New York law." *641 Ave. of Ams. Ltd. P'ship v. 641 Assocs., Ltd.*, 189 B.R. 583, 590 (S.D.N.Y. 1995) (citing *Butner v. United States*, 440 U.S. 48, 51-54 (1979) (recognizing that "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law")). To establish a *prima facie* case of foreclosure in New York, a plaintiff must demonstrate: "the existence of the mortgage and mortgage note, ownership of the mortgage, and the defendant's default in payment." *Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 414 (E.D.N.Y. 2018) (applying New York law); *1077 Madison St., LLC v. Smith*, 670 F. App'x 745, 746 (2d Cir. 2016) (summary order) (same). However, "foreclosure of a mortgage may not be brought by one who has no title to it." *U.S. Bank, N.A. v. Sharif*, 89 A.D.3d 723, 724 (2d Dep't 2011). Thus, "[w]here standing is raised as a defense by the defendant, the plaintiff is required to prove its standing before it may be determined whether the plaintiff is entitled to relief." *Id.* Additionally, where notice is required by statute or the mortgage agreement, the plaintiff-mortgagee must

show that it provided such notice. *See* N.Y. Real Prop. Acts. § 1304(1) (requiring ninety days' notice for mortgages securing home loans); *see also Wells Fargo Bank Nat'l Ass'n v. 366 Realty LLC*, No. 17-CV-3570 (SJ) (RER), 2021 WL 9494173, at *4 & n.6 (E.D.N.Y. Mar. 16, 2021) (explaining that, for mortgages securing other types of loans, notice is not required unless provided for in the mortgage agreement).

"Once a plaintiff . . . has established a *prima facie* case by presenting a note, a mortgage, and proof of default, it has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor." *Windward Bora, LLC v. Brown*, No. 21-CV-3147 (KAM) (RER), 2022 WL 875100, at *3 (E.D.N.Y. Mar. 24, 2022). In other words, once a plaintiff demonstrates its *prima facie* case, the burden shifts to the defendant "to raise a triable issue of fact, including with respect to any alleged defenses or counterclaims." *Gustavia Home*, 321 F. Supp. 3d at 414-15. A plaintiff-mortgagee is entitled to summary judgment "if it establishes by documentary evidence the facts underlying its cause of action and the absence of a triable fact." *U.S. Bank, N.A. v. Squadron VCD, LLC*, 504 F. App'x 30, 32 (2d Cir. 2012) (summary order); *see also R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 n.2 (2d Cir. 1997) (same).

With respect to proof of default, general allegations will not suffice. *See Gustavia Home*, 321 F. Supp. 3d at 415. Instead, "there must be some proof in the form of an affidavit of a person with knowledge, or a complaint verified by a person with knowledge." *Id.*; *see also Yusubov v. Zoya AB Mgmt., LLC*, No. 20-CV-3913 (RPK) (CLP), 2023 WL 6308074, at *4 (E.D.N.Y. Sept. 28, 2023) ("At the summary judgment stage, a plaintiff may establish default in the form of an affidavit of a person with knowledge."). Thus, courts regularly accept as proof of default the affidavits of persons with knowledge of the loan. *See, e.g., Gustavia Home*, 321 F. Supp. 3d at 415 (accepting as proof of default the affidavit

of plaintiff-mortgagee's single member, stating based on "his own knowledge and from reviewing Plaintiff's business records kept in the ordinary course of Plaintiff's business" that defendant failed to cure the default); *Wilmington Sav. Fund Soc'y, FSB v. Fernandez*, 712 F. Supp. 3d 324, 333 (E.D.N.Y. 2024) (accepting as proof of default the affidavit of plaintiff-mortgagee's Vice President, "stating based on his personal knowledge and review of its business records that the loan is due . . . and . . . outstanding"); *Plenitude Cap. LLC v. Utica Ventures, LLC*, 592 F. Supp. 3d 82, 86 (E.D.N.Y. 2021) (accepting as proof of default the affidavit of plaintiff-mortgagee's attorney, establishing the default); *Yusubov*, 2023 WL 6308074, at *4 (accepting as proof of default the affidavit of plaintiff's father, who was "primarily responsible for executing the mortgage agreement and collecting on the underlying obligation"); *Wells Fargo Bank, N.A. v. Watts*, No. 16-CV-6919 (ENV) (RER), 2019 WL 8325097, at *4 (E.D.N.Y. Dec. 16, 2019) (accepting as proof of default the affidavit of a person with "personal knowledge of the matter," expressing that "[t]here is a default under the terms and conditions of the Promissory Note and Mortgage because [certain] payments were not made").

Plaintiff argues that it is entitled to summary judgment against Borrower and Guarantor, and that Defendants' "conclusory" affirmative defenses—which Plaintiff claims Defendants "abandoned" by failing to mention them in their opposition brief—should be dismissed. (Pl.'s Mot. for SJ at 7-19; Pl.'s Reply at 2-5, 6-8.) Plaintiff additionally "seeks to conform the pleadings to the proof," requesting that the court consider May 2, 2022 as the alleged maturity and default date, rather than May 2, 2020, as pled in the Complaint. (Pl.'s Reply at 5.) Finally, Plaintiff asks the court to "amend[] the caption . . . to delete defendants sued herein as 'John Doe No. 1 to 10.'" (Pl.'s Mot. for SJ at 1.)

Defendants oppose Plaintiff's motion. First, they argue that Britt's declaration is improper because he "fails to offer a copy of the

documents he allegedly relied upon in drafting his declaration," thus, "there is no way Mr. Britt has personal knowledge of the relevant facts in connection with the alleged defaults." (Defs.' Opp. at 4-5.) Second, Defendants assert that Plaintiff fails to provide any new evidence of default, instead relying on the same documentary evidence that "has already been rejected by this Court." (*Id.* at 5-7.) Third and finally, Defendants contend that summary judgment must be denied because Plaintiff failed to provide notice of default to Borrower, as required by the Loan Documents. (*Id.* at 7-9.)

The court concludes that Plaintiff has standing to bring this foreclosure action, that Plaintiff has established its *prima facie* case of foreclosure, and that Defendants have not met their burden "to raise a triable issue of fact, including with respect to any alleged defenses or counterclaims." *Gustavia Home,* 321 F. Supp. 3d at 414-15. As such, Plaintiff is entitled to summary judgment, and the court grants Plaintiff's unopposed request to dismiss John Does No. 1 to 10 from this action.

1.  Standing

The court concludes that Plaintiff has standing to bring this foreclosure action. "Where standing is raised as a defense by the defendant, the plaintiff is required to prove its standing before it may be determined whether the plaintiff is entitled to relief." *Sharif,* 89 A.D.3d at 724. "In a mortgage foreclosure action, a plaintiff has standing where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced." *U.S. Bank, N.A. v. Collymore,* 68 A.D.3d 752, 753 (2d Dep't 2009). Borrower claims that Plaintiff lacks standing because "it was not in possession of the original mortgage note at the time this action was commenced." (Borrower Answer ¶ 29.) However, Plaintiff attached a copy of the Note to the Complaint. (*See* Compl. ¶ 9; *see also* Note.) In New York, a plaintiff may "establish[] its standing as

holder of [a] note by demonstrating that the note was in its possession . . . as evidenced by its attachment of the endorsed note to the complaint." *Fed. Nat'l Mortg. Ass'n. v. Yakaputz II, Inc.*, 141 A.D.3d 506, 507 (2d Dep't 2016); *JPMorgan Chase Bank, N.A. v. Roseman*, 137 A.D.3d 1222, 1223 (2d Dep't 2016) ("[A] copy of the note was annexed to the complaint, establishing prima facie that the plaintiff had standing."). As such, Plaintiff has standing to bring this foreclosure action.

### 2.    Proof of Mortgage and Note

As the court held in its decision denying Plaintiff's first motion for summary judgment, Plaintiff "has demonstrated its ownership of a mortgage encumbering the [Brooklyn Premises] and the authenticity of the Guarantee." *Golden Bridge,* 2024 WL 22784, at *2 (citing Loan Documents). In particular, Plaintiff has submitted copies of the Mortgage and Note, which evidence its ownership and possession of the same. (*See* Note; Mortgage.) Defendants do not dispute the validity of the Loan Documents. (*See* Defs.' Response to Pl.'s 56.1 St. ¶¶ 2-4.) As such, Plaintiff demonstrates "the existence of the mortgage and mortgage note [and] ownership of the mortgage." *Gustavia Home*, 321 F. Supp. 3d at 414-15 (accepting as proof of the existence and ownership of the mortgage copies of the mortgage, note, and chain of assignments).

### 3.    Proof of Default

The sole remaining issue regarding Plaintiff's *prima facie* case is whether Plaintiff provides sufficient evidence of default. The court concludes that it does.

As noted above, the court previously determined that Plaintiff was not entitled to summary judgment because it failed to provide sufficient documentary evidence of default. *Golden Bridge,* 2024 WL 22784, at *2-3. This was so because, while Plaintiff alleged that Defendants were in default as of May 2, 2020, the

17

Borrower Statement showed, among other things, that Borrower continued to make monthly payments through at least January 2022. *Id.* at *3. Such evidence was inconsistent with a default as of May 2, 2020. *Id.*

Now, the parties have submitted evidence of the First Extension Agreement, which extended the loan's maturity date to May 2, 2021. (*See* First Extension Agreement at ECF pp. 2-3.) Moreover, while neither party produced a copy of the executed Second Extension Agreement, the parties apparently agree—despite the blatant self-contradictions in Plaintiff's papers—that they executed the Second Extension Agreement extending the loan's maturity date to May 1, 2022. Such an agreement, which affects an interest in real property, is governed by New York's Statute of Frauds and must ordinarily be memorialized in a writing signed by both parties to be enforceable. *See* N.Y. Gen. Oblig. Law. § 5-703(3) (requiring the existence of a signed writing to enforce an agreement for an interest in real property); *see also Freedom Mortg. Corp. v. Heirs*, No. 19-CV-1273 (KMK), 2020 WL 3639989, at *4 (S.D.N.Y. July 6, 2020) ("[I]n New York, modification of a mortgage is subject to the statute of frauds and accordingly must be in writing to be enforceable and signed by the party to be charged."); *Gleason v. Wells Fargo Home Mortg., Inc.*, No. 651311/11, 2013 WL 4734875, at *1 (N.Y. Sup. Ct. Aug. 28, 2013) ("[P]laintiff's position that the note stands on its own, apart from the mortgage, and is not subject to the statute of frauds, is without merit."). However, "[a]n agreement which violates the statute of frauds may nonetheless be enforceable where there has been part performance unequivocally referable to the contract by the party seeking to enforce the agreement." *Barretti v. Detore*, 95 A.D.3d 803, 806 (2d Dep't 2012) (explaining that "unequivocally referrable" conduct is conduct "inconsistent with any other explanation"). And the Court of Appeals of New York has held that "oral agreements that violate the Statute of Frauds are nonetheless enforceable where the party to

be charged admits having entered into the contract." *Matisoff v. Dobi*, 90 N.Y.2d 127, 134 (1997).

Here, the parties agree that they executed the Second Extension Agreement, extending the loan's maturity date to May 1, 2022, and that counsel for Defendants paid the second extension fee of $22,840.00 to counsel for Golden Bridge in January 2022. (Pl.'s 56.1 St. ¶ 12; Defs.' Response to Pl.'s 56.1 St. ¶ 12.) The Borrower Statement further confirms that Borrower made, and Plaintiff accepted, monthly interest payments of $8,565.00 through at least January 2022—conduct "inconsistent with any . . . explanation" other than the existence of a fully executed second modification agreement. *Barretti*, 95 A.D.3d at 806. (*See also* Borrower Statement.) Thus, because both parties "admit[] having entered into the [Second Extension Agreement]," *Matisoff*, 90 N.Y.2d at 134, and their conduct is "inconsistent with any other explanation," *Barretti*, 95 A.D.3d at 806, for purposes of deciding this motion for summary judgment, the court accepts as true the fact that the parties executed the Second Extension Agreement extending the loan's maturity date to May 1, 2022.

A maturity date of May 1, 2022 casts Plaintiff's evidence in a new light. Now, the court is presented with an affidavit from Erez Britt, who states, based on his personal knowledge as Golden Bridge's CEO, that "following the three Interim Payments on January 30, 2022, Borrower failed to make any further Interim Payments, or any other payments pursuant to the Loan Documents (the 'Default'). . . . [and] Guarantor failed to make any payments pursuant to the Loan Documents." (First Britt Decl. ¶ 17.) Britt, in turn, cites to the Borrower Statement, which shows a payment of $2,284.00 in May 2019, followed by monthly payments of $8,565.00 from June 2019 to October 2021, and three separate payments of $8,565.00 in January 2022, but no payments after January 2022. (Borrower Statement.) Plaintiff also

cites the Default Letter, which claims a default "[a]s of May 4, 2022." (Default Letter at ECF p. 3.)

While the Borrower Statement still reflects that, as of February 8, 2023, Borrower had $0.00 of unpaid interest, $0.00 of late charges, and $0.00 of any other charges due, Defendants offer no explanation as to why, with a maturity date of May 1, 2022, monthly interest payments for February, March, and April of 2022 would be missing from this document. (*See* Borrower Statement.) Instead, Defendants blanketly deny Britt's statement that Defendants failed to make any payments after January 2022, with no evidence to back that up. (Defs.' Response to Pl.'s 56.1 St. ¶ 15; Defs.' Opp. at 4-5.) Nor do they offer any support for their bald assertion that there is "no way" Britt—Plaintiff's CEO—could have personal knowledge of the relevant facts in connection with the alleged default. (Defs.' Opp. at 5.) These unsupported denials do not create a genuine dispute of fact regarding whether Defendants were in default. *See* Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly . . . address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed."); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."); *Bustamante v. Kind, LLC*, 100 F.4th 419, 432 (2d Cir. 2024) ("Conclusory allegations, conjecture, and speculation are insufficient to create a genuine issue of fact."); *EC ex rel. RC v. Cnty. of Suffolk*, 882 F. Supp. 2d 323, 346 (E.D.N.Y. 2012) ("Mere unsubstantiated denials do not create genuine issues of material fact.").

Britt's declaration, based on his personal knowledge, that Defendants were in default after January 2022 is sufficient in and of itself to satisfy Plaintiff's *prima facie* burden of proving default. *See, e.g., Gustavia Home*, 321 F. Supp. 3d at 415 (accepting as

proof of default the affidavit of plaintiff-mortgagee's single member, stating based on "his own knowledge and from reviewing Plaintiff's business records kept in the ordinary course of Plaintiff's business" that defendant failed to cure the default); *Wilmington Sav.*, 712 F. Supp. 3d at 333 (accepting as proof of default the affidavit of plaintiff-mortgagee's Vice President, "stating based on his personal knowledge and review of its business records that the loan is due . . . and . . . outstanding"). Thus, Plaintiff has established its *prima facie* case, and the burden shifts to Defendants "to raise a triable issue of fact, including with respect to any alleged defenses or counterclaims." *Gustavia Home*, 321 F. Supp. 3d at 414-15. Because Defendants' blanket denials do not raise a triable issue of fact regarding Plaintiffs' *prima facie* case, the court turns to Defendants' affirmative defenses.

### 4. Notice of Default

Defendants claim that Plaintiff failed to provide notice of default to Borrower as required by the Loan Documents. (Defs.' Opp. at 7-9; Borrower Answer ¶ 31; Guarantor Answer ¶ 36.) Specifically, Defendants point to the following paragraphs from the Mortgage as evidence that the Loan Documents required notice to Borrower:

> **33. The Debt shall become due, at the option of the Mortgagee, upon the occurrence of any of the following events:**
>
> (a) after default in the payment of any installment of principal or interest as provided in the Note,
>
> (b) **after default in payment** and reimbursement **of the Mortgage, after demand**, for any casts, expenses, and fees advanced or incurred by the Mortgagee in curing any default or failure of the Mortgagor under this Mortgage,
>
> [subsections (c) through (i) omitted]

21

. . . .

55. **All notices or other communications required to be given pursuant to this Mortgage shall be in writing and . . . addressed as follows:**

If to the Mortgagor: **DGS18 REALTY LLC**

2621 East 63 Street

Brooklyn, NY 11234

If to the Mortgagee: GOLDEN BRIDGE LLC d/b/a GOLDEN BRIDGE FUNDING, LLC [address omitted]

(Mortgage ¶¶ 33, 55 (emphasized portions in bold); Defs.' Opp. at 7-8.) Defendants additionally characterize the court's prior decision as "den[ying] Plaintiff's First Motion [for summary judgment] [because] it failed to provide documentary evidence that it sent a notice of default to the Borrower." (Defs.' Opp. at 7.)

Plaintiff contends that the Loan Documents do not require notice of default to Borrower or Guarantor. (Pl.'s Mot. for SJ at 14; Pl.'s Reply at 6-7.) In particular, Plaintiff points out that paragraph 33(b) of the Mortgage requires "notice" (*i.e.*, a demand) only when the mortgagee seeks reimbursement of costs, expenses, and/or fees advanced by it to cure the mortgagor's default. (Pl.'s Reply at 7 (citing Mortgage ¶ 33(b)).) Thus, Plaintiff contends that "a fair reading of the Mortgage reveals that in the event of a payment default, notice is not required." (*Id.*)

The court concludes that the Mortgage did not require Plaintiff to provide Borrower with notice of default.[8]

---

[8] Although neither party raises the issue, the court notes that, notwithstanding the terms of the Mortgage, New York law does not require a

First, notice of default is not statutorily required in these circumstances. *366 Realty*, 2021 WL 9494173, at *4 & n.6 (explaining that, for mortgages securing loans other than home loans, notice is not required unless provided for in the mortgage agreement). Thus, notice of default is not required unless provided for in the Mortgage.

Second, "[n]otice of default and demand for repayment are two distinct principles." *Miss Jones LLC v. Stiles*, No. 17-CV-1450 (NSR), 2019 WL 3034906, at *3 (S.D.N.Y. July 10, 2019). While a notice "inform[s] the debtor that he is in default," a demand "is imperative" and "requires the recipient to take specified action." *Id.* The Mortgage itself recognizes this distinction: For example, while paragraph 33(b) requires a "demand" when Plaintiff seeks "casts, expenses, and fees advanced or incurred by the Mortgagee in curing any default," paragraph 33(e) requires "notice and demand" after "default . . . either in assigning and delivering the policies insuring the Improvements or the Personal Property against loss . . . or in reimbursing the Mortgages for premiums paid on such insurance." (Mortgage ¶¶ 33(b), (e).) While the parties refer to the Default Letter interchangeably as a "notice" and "demand," the Letter functions as a demand for repayment from Guarantor. Specifically, the Demand Letter states that Guarantor is "immediately obligated and required to pay in full the Outstanding Debt . . . plus accruing interest and default interest, accruing attorneys' fees and expenses, plus costs of collection," and demands that such payment be made "by May 17, 2022."

---

mortgagee to give advance notice of a foreclosure action in these circumstances. *See Yusubov*, 2023 WL 6308074, at *5 (noting that, while New York law "requires at least ninety days' notice before a mortgagee can foreclose on a mortgage securing a 'home loan,' there is no such statutory requirement for other types of mortgages," and, to qualify as a home loan, "the borrower must be a 'natural person'"). Thus, because the borrower here is DGS18 Realty LLC, a corporation, the statutory notice requirement does not apply. *See id.*

(Default Letter at ECF p. 4.) While the characterization ultimately has no impact on the court's decision, it appears that the Default Letter is more accurately described as a demand for repayment, rather than a notice of default. The court keeps this distinction in mind in assessing Defendants' notice defense.

Third, the Mortgage did not require notice of default to Borrower in these circumstances. As Plaintiff points out, the Mortgage provides that "[t]he Debt shall become due, at the option of the Mortgagee, upon the occurrence of *any of the following events*," one of which is "default in the payment of *any installment of principal or interest as provided in the Note*." (Mortgage ¶ 33(a) (emphases added).) The undisputed facts demonstrate that is exactly what happened here: Borrower defaulted on its interest payments after January 2022, and defaulted on the remaining interest and principal payments as of May 1, 2022. The plain language of the Mortgage provides that the Debt shall become due, at the option of Plaintiff, upon the occurrence of such an event—without any requirement for a "demand" or "notice" to Borrower. (*Id.*) In fact, the only circumstance in which the Mortgage requires "notice" prior to the debt becoming due is "after default . . . either in assigning and delivering the policies insuring the Improvements or the Personal Property against loss . . . or in reimbursing the Mortgages for premiums paid on such insurance." (*Id.* ¶ 33(e).) Defendants do not suggest that such conditions were present here. Thus, at least in these circumstances, the Mortgage did not require notice of default to Borrower.

Finally, while the Default Letter states that Plaintiff seeks "attorneys' fees[,] expenses, [and] costs of collection," (Default Letter at ECF p. 4), thus seemingly implicating paragraph 33(b)'s requirement of a "demand" prior to the collection of "casts, expenses, and fees" incurred in curing a default, the undisputed

facts show that Plaintiff complied with the requirements of paragraph 33(b), (Mortgage ¶ 33(b).) As noted above, the Default Letter functions as a demand to Guarantor for repayment of the outstanding debt. And Defendants do not claim that the Loan Documents required Plaintiff to provide a demand to Borrower for repayment of the outstanding debt. (*See generally* Defs.' Opp.) Rather, Defendants assert that the Loan Documents required Plaintiff to provide *notice of default* to Borrower. (*Id.* at 7-9.) Moreover, even if Defendants argued that Plaintiff violated paragraph 33(b) by failing to provide a demand to Borrower for repayment of the outstanding debt, the Mortgage provides that the debt "shall become due, at the option of the Mortgagee, upon the occurrence of *any* of the [events listed in paragraph 33]." (Mortgage ¶ 33.) One of those events—"default in the payment of any installment of principal or interest"—occurred here, and there can be no genuine dispute that the Mortgage does not require notice or demand in such circumstances. (*Id.* ¶ 33(a).)

Thus, the court concludes that the Mortgage did not require notice of default to Borrower, and Defendants' affirmative defense on this basis fails.

### 5.    Remaining Affirmative Defenses

Defendants raise numerous other affirmative defenses in their respective answers, but do not mention these defenses in their opposition brief. (Pl.'s Mot. for SJ at 10-19 (addressing Defendants' affirmative defenses); *see generally* Defs.' Opp.; Pl.'s Reply at 8.) As such, the court deems these defenses abandoned. *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[A] court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one

ground and the party opposing summary judgment fails to address the argument in any way."); *Capitol Recs., LLC v. ReDigi Inc.*, No. 12-CV-95 (RJS), 2015 WL 5076457, at *4 (S.D.N.Y. Aug. 27, 2015) ("A court may also deem an [affirmative] defense to have been waived, despite being pleaded in the party's answer, if the party does not press it in its summary judgment papers."); *Dunkin' Donuts Franchised Rests. LLC v. Tim & Tab Donuts, Inc.*, No. 7-CV-3662 (KAM) (MDG), 2009 WL 2997382, at *9 (E.D.N.Y. Sept. 15, 2009) ("As a result of defendants' failure to oppose plaintiffs' [summary judgment] motion as to their defenses and counterclaims, the court finds that the defendants abandoned their affirmative defenses and counterclaims.").

Although Defendants abandoned their remaining affirmative defenses, the court nevertheless examines Defendants' answers to determine if they "contain[] any facts that might conflict with plaintiff's evidence." *Gustavia Home*, 321 F. Supp. 3d at 415. Plaintiff describes Defendants' affirmative defenses as "conclusory" and lacking in "any additional supporting evidence." (Pl.'s Mot. for SJ at 10-11.) The court agrees that Defendants' answers contain only unsupported assertions, including that: any and all damages allegedly sustained by Plaintiff "were caused, in whole or in part, by the culpable conduct, carelessness, recklessness, negligence, or wrongdoing of Plaintiff, its agents, and others for whom it was responsible," (Borrower Answer ¶ 32; Guarantor Answer ¶ 30); Plaintiff's Note and Mortgage "assess high interest rates which violate civil laws of usury in the State of New York," (Borrower Answer ¶ 34; Guarantor Answer ¶ 31); Plaintiff "has breached its own loan agreement by its refusal to comply with the terms of said loan agreements and refusal to negotiate in good faith," (Borrower Answer ¶ 35; Guarantor Answer ¶ 32); Plaintiff's "purported personal guaranty is unenforceable as it lacks mutual assent and a meeting of the minds necessary to create an enforceable agreement," (Guarantor Answer ¶ 33); Plaintiff's "purported personal guaranty is unenforceable as it

fails for lack of consideration," (*id.* ¶ 34); the Guaranty is "limited in scope and the property to which payment was guaranteed has already been disposed of and the debt repaid in full to the Plaintiff," (*id.* ¶ 35); Plaintiff "materially altered the underlying debt" without notifying Guarantor, (*id.* ¶ 37); Plaintiff "negligently administered this loan in a way that materially increased the risk of default," (*id.* ¶ 38); and Plaintiff "has a duty under the common law to pursue [Borrower] first, prior to making demands under the purported guarantee," (*id.* ¶ 39).

Defendants provide no evidentiary support for these abandoned defenses, and no such support exists in the record. (*See generally* Defs.' Opp.; Borrower Answer; Guarantor Answer.) Therefore, in light of the uncontroverted evidence in the record, the court concludes that Plaintiff is entitled to summary judgment in this mortgage foreclosure action. *See Gustavia Home,* 321 F. Supp. 3d at 416 (adopting similar approach to abandoned affirmative defenses in a mortgage foreclosure action).

### B.   Motion to Appoint A Receiver

Plaintiff moves for the appointment of Douglas Rosenberg of BPC Management Corporation as receiver of the Brooklyn Premises, and attaches, *inter alia*, the Britt Declaration and a declaration from Plaintiff's counsel Steven S. Rand in support of its motion. (*See generally* Pl.'s Mot. for Receiver; Second Britt Decl. (Dkt. 33-1); Rand Decl. (Dkt. 33-10).)[9] Plaintiff asserts that the factual

---

[9] The Rand Declaration indicates that "Mr. Rosenberg has agreed that it would be expeditious and cost efficient for the Court if he was appointed receiver as to both properties[,]" presumably referring to the Brooklyn Premises and the Staten Island Premises. (Rand Decl. ¶ 16.) However, the Receiver Motion requests that the court appoint Mr. Rosenberg as receiver of *only* "Borrower's Assets," (*see id.* ¶¶ 12-13), which is defined as the premises located at 2729-2731 West 16th Street, Brooklyn, New York 11224 (*i.e.,* the Brooklyn Premises) and "the Leases, the Rents, the books, records and other property related to the ownership of the [Brooklyn] Premises,"

background relevant to Plaintiff's motion is "fully set forth" in the Declarations and other documents attached to the Receiver Motion, including the Mortgage. (Pl.'s Mot. for Receiver at 2.) Plaintiff's motion is unopposed.

Plaintiff argues that the court should appoint a receiver over the Brooklyn Premises because the express terms of the loan documents provide for the appointment of a receiver upon Defendant's default, and default has "indisputably transpired." (*Id.* at 3.) The Mortgage's section on Remedies provides:

> 40. **The Mortgagee, in any action to foreclose this Mortgage, shall be entitled, without regard to the solvency or insolvency of any person or entity obligated for the payment of the Debt or the adequacy of any security for the Debt and without notice, to the appointment of a receiver and notice of such appointment is hereby expressly waived.** The Mortgagee or any receiver shall be entitled to take possession of the Mortgaged Property from the owner[,] tenants and/or occupants of the whole or any part thereof and to collect and receive the Rents and the value of the use and occupation of the Mortgaged Property, or any part thereof, from the then owner, tenants and/or occupants thereof for the benefit of the Mortgagee. The Mortgagor will pay monthly in advance to the Mortgagee or to any receiver appointed to collect the Rents the fair and reasonable rental value for the use and occupation of the Mortgaged Property, or of such part thereof as may be in the possession of the Mortgagor, and upon default in any such payment the Mortgagor will vacate and surrender the possession of the Mortgaged Property to the Mortgagee or such receiver.

---

(Pl.'s Mot. for Receiver at 1.) Accordingly, the court considers Plaintiff's motion to appoint a receiver as limited to the Brooklyn Premises.

(Mortgage ¶ 40 (emphasis added).)

The court finds that the appointment of a receiver over the Brooklyn Premises is appropriate because the Mortgage provides for a receiver's appointment, and additional factors weigh in favor of the appointment of a receiver. The Mortgage expressly contemplates the appointment of a receiver "in any action to foreclose th[e] Mortgage," empowering the Mortgagee or "any receiver" to take possession of the Brooklyn Premises and to "collect and receive the Rents and the value of the use and occupation of the [Brooklyn Premises]." (*Id.*) *See Wilmington PT Corp.*, 2020 WL 13158288, at 3* (reasoning that the court's "threshold inquiry" on a motion to appoint a receiver is whether the mortgage contains a clause providing for the appointment of a receiver). Furthermore, under the Mortgage's express terms, Defendants agreed to "transfer[] and assign[]" rents from the Brooklyn Premises "as further security for the payment of the [Mortgage] Debt." (Mortgage ¶ 24.)[10] Pursuant to the Mortgage's provision concerning the appointment of a receiver, (*id.* ¶ 40), Plaintiff brought this action to foreclose the Mortgage, (Complaint ¶ 8), and the Mortgage was secured in part by the Brooklyn Premises, (Mortgage at 1 (listing the Brooklyn Premises and Staten Island Premises as the "Mortgaged Property").)

---

[10] "The Rents of the Mortgaged Property are hereby transferred and assigned to the Mortgagee as further security for the payment of the Debt, and the Mortgagee shall have the right to enter upon the Mortgaged Property for the purpose of collecting the same and to let and operate the Mortgaged property or any part thereof and to apply the Rents, issues and profits, either in whole or in part, as the Mortgagee elects, to the payment of all charges and expenses of the Mortgaged Property or in reduction of any part of the Debt or other sums due or to become due under the Mote or [sic] this Mortgage. This assignment and grant shall continue in effect until the Debt and all other obligations secured by this Mortgage are paid." (Mortgage ¶ 24.)

Additional factors also weigh in favor of the appointment of a receiver. *See Nissan Motor Acceptance Corp.*, 2022 WL 6784868, at 2* (listing factors courts consider in deciding whether to appoint a receiver). Plaintiff's successful motion for summary judgment conclusively establishes its probability of success as to the Brooklyn Premises. And the probability of harm to Plaintiff by denial of the receivership outweighs the risk of injury to Defendants in granting it because Defendant "continues to collect Rents monthly," but "has failed to turnover those funds to Plaintiff." (Second Britt Decl. ¶¶ 22-23.) Absent a receiver that would collect the rent, Plaintiff stands to lose $5,200 in current monthly rental income for the Brooklyn Premises, and Plaintiff's appraiser opined that the market monthly rental income for the Brooklyn Premises is $6,900. (*See* Appraisal Report (Dkt. 33-9) at ECF p. 5.) The court finds that Douglas Rosenberg is well qualified to serve as receiver.

## IV. CONCLUSION

For the foregoing reasons, John Does No. 1 to 10 are DISMISSED from this action, Plaintiff's motion for summary judgment is GRANTED, and Plaintiff's motion to appoint a receiver is GRANTED. Additionally, Douglas Rosenberg is APPOINTED as Receiver of the Brooklyn Premises, and the court ADOPTS Plaintiff's Proposed Order Appointing Receiver in its entirety.

SO ORDERED.

Dated:     Brooklyn, New York
           March 26, 2025

                                    s/Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge

30